IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 JUL 12 PM 5: 34

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| COREY B. HAYNES, | Χ<br>Χ<br>Χ | |
| Plaintiff, | Χ<br>Χ | |
| vs. | Χ<br>Χ | No. 05-2370-D/V |
| CITY OF DYERSBURG, et al., | Χ<br>Χ | |
| Defendants. | Χ<br>Χ | |

ORDER ASSESSING $250 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Corey B. Haynes, Tennessee Department of Correction ("TDOC") prisoner number 299024, an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on May 13, 2005 in connection with his previous confinement at the Dyer County Justice Center ("Jail"). The Clerk shall record the defendants as the City of Dyersburg and Dyer County.[1]

---

[1]     The Court construes the plaintiff's allegations concerning the Jail as an attempt to assert a claim against Dyer County.

The complaint also purports to sue the unnamed doctor who examined the plaintiff while he was incarcerated at the Jail. However, service of process cannot be made on a fictitious party. Moreover, the filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitation against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996);

(continued...)

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _11/13/06_

I.   <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $250 required by 28 U.S.C. § 1914(a).[2] The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, the plaintiff has properly completed and submitted an <u>in forma pauperis</u> affidavit containing a certification by the trust fund officer and a trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full

---

[1]      (...continued)
<u>Bufalino v. Michigan Bell Telephone Co.</u>, 404 F.2d 1023, 1028 (6th Cir. 1968). Thus, to the extent plaintiff seeks to bring any complaint against any other individual or entity, he must identify the defendant and file a new lawsuit within the one-year statute of limitations applicable to § 1983 actions. Tenn. Code Ann. § 28-3-104(a).

[2]      Effective March 7, 2005, the civil filing fee was increased from $150 to $250.

amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $250.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the WTSP to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.  Analysis of Plaintiff's Claims

The complaint alleges that, in March of 2004, plaintiff advised the doctor at the Jail that he had a venereal infection. The doctor responded by stating that the plaintiff was "perfectly OK" and need not visit him under such circumstances anymore. Plaintiff then called his girlfriend and asked her to inform the

4

Dyer County Health Department that plaintiff had a venereal disease. Plaintiff's girlfriend was tested and diagnosed with chlamydia, and the Health Department recommended that plaintiff be brought to their clinic for treatment. Plaintiff was diagnosed with chlamydia and received antibiotics. He complains that he was forced to endure this condition for at least one month because of the actions of the doctor, and he had to take two courses of antibiotics, instead of one, because of the delay.

The plaintiff seeks $500,000 in damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2).[3] Plaintiff's complaint is subject to dismissal in its entirety.

The complaint does not appear to allege an Eighth Amendment claim.[4] The Eighth Amendment prohibits cruel and unusual

---

[3]      In this case, the complaint alleges that the Jail does not have an inmate grievance procedure and, therefore, 42 U.S.C. § 1997e(a) is inapplicable.

[4]      Convicted inmates' rights stem from the Eighth Amendment, while pretrial detainees' rights stem from the Fourteenth Amendment. Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). The scope of a detainee's Fourteenth Amendment rights are equivalent to that of a convicted inmate under the Eighth Amendment.
(continued...)

punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Wilson</u>, 501 U.S. at 298; <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834; <u>Hudson</u>, 503 U.S. at 8; <u>Wilson</u>, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03.

The Eighth Amendment proscription of cruel and unusual punishment prohibits prison authorities from displaying deliberate indifference to the serious medical needs of prisoners, because such indifference constitutes the "unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir.

---

[4]    (...continued)
<u>Thompson</u>, 29 F.3d at 242; <u>Roberts</u>, 773 F.2d at 723; <u>see also</u> <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 107 (5th Cir. 1993); <u>Valencia v. Wiggins</u>, 981 F.2d 1440, 1446 (5th Cir. 1993). <u>See generally</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989); <u>Vineyard v. County of Murray</u>, 990 F.2d 1207, 1211-12 (11th Cir. 1993); <u>Gilland v. Owens</u>, 718 F. Supp. 665, 682-83 (W.D. Tenn. 1989). In this case, it is not clear whether the plaintiff was a pretrial detainee at the time of the incident in question. As the scope of his rights are equivalent in any event, the Court will analyze his claims under Eighth Amendment principles.

1980) (quoting <u>Laaman v. Helgemoe</u>, 437 F. Supp. 269, 311 (D.N.H. 1977)).

To establish liability under the Eighth Amendment for a claim based on failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993); <u>Woods v. Lecureux</u>, 110 F.3d 1215, 1222 (6th Cir. 1997); <u>Street v. Corrections Corp. of Am.</u>, 102 F.3d 810, 814 (6th Cir. 1996); <u>Taylor v. Michigan Dep't of Corrections</u>, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted).

In this case, it appears likely that plaintiff has failed to establish the subjective component of an Eighth Amendment violation. At most, it appears that the doctor failed to diagnose the plaintiff's chlamydia, and the complaint does not allege that the plaintiff suffered physical symptoms that made it obvious he was in need of immediate medical attention. At most, then, plaintiff has a claim against the unnamed doctor for medical malpractice, which does not rise to the level of a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 105-06 ; see also Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) ("Deliberate indifference . . . does not include negligence in diagnosing a medical condition.").

Moreover, even if the complaint were to state a claim against the doctor, who is not a party to this action, it does not follow that the City of Dyersburg and Dyer County are liable to the plaintiff. A local governmental entity "is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992); see also Jett v. Dallas Indep. School Dist., 491 U.S. 701, 726-29 (1989) (discussing history of civil rights statutes and concluding that Congress plainly did not intend to impose vicarious liability on counties, municipalities or other local governmental

bodies); <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)
(rejecting simple vicarious liability for municipalities under §
1983); <u>City of St. Louis v. Praprotnik</u>, 458 U.S. 112, 122 (1988)
(interpreting rejection of <u>respondeat superior</u> liability by <u>Monell
v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978), as a command
that "local governments . . . should be held responsible when, and
only when, their official policies cause their employees to violate
another person's constitutional rights"); <u>Pembaur v. City of
Cincinnati</u>, 475 U.S. 469, 480-81 (1986) (same); <u>Stemler v. City of
Florence</u>, 126 F.3d 856, 865 (6th Cir. 1997) (rejecting claims
against city and county and holding that "in order to state a claim
against a city or a county under § 1983, a plaintiff must show that
his injury was caused by an unconstitutional 'policy' or 'custom'
of the municipality"). Thus, to establish a basis for municipal
liability, a plaintiff must demonstrate

> (1) that the City pursued an official custom or policy of
> failing to adequately train, supervise, or discipline its
> officers in a particular matter, and (2) that such
> official policy or custom was adopted by the official
> makers of policy with "deliberate indifference" towards
> the constitutional rights of persons affected by the
> policy or custom.

<u>Haverstick v. Financial Fed. Credit, Inc.</u>, 32 F.3d 989, 996 n.8
(6th Cir. 1994) (citing <u>City of Canton</u>, 489 U.S. at 387-88). Thus,
"'a plaintiff must "identify the policy, connect the policy to the
city itself and show that the particular injury was incurred

because of the execution of that policy."'" <u>Searcy v. City of Dayton</u>, 38 F.3d 282, 287 (6th Cir. 1994) (citations omitted).

The plaintiff's complaint, even construed liberally, <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), does not allege that the plaintiff's injury was caused by an unconstitutional policy or custom of either the City or the County. The fact that the plaintiff received treatment after the Health Department contacted the Jail suggests that there was no policy or custom but, rather, the failure by a single doctor to correctly diagnose the plaintiff's condition.

Finally, a one-year statute of limitations is applicable to § 1983 actions in Tennessee. Tenn. Code Ann. § 28-3-104(a); <u>see Wilson v. Garcia</u>, 471 U.S. 261, 266-268 (1985); <u>Bernt v. Tennessee</u>, 796 F.2d 879 (6th Cir. 1986). The complaint alleges that plaintiff first visited the doctor in March of 2004 and, although it does not specifically state when he received treatment for his condition, he asserts that he suffered for approximately one month. The complaint in this action was not filed until May 13, 2005 and, even if the plaintiff is given the benefit of the postmark date of May 11, 2005, <u>see Houston v. Lack</u>, 487 U.S. 255 (1988), it is probably time barred.

Accordingly, the Court DISMISSES the complaint, in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1), for failure to state a claim on which relief may be granted.

III. <u>Appeal Issues</u>

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken <u>in forma pauperis</u> if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal <u>in forma pauperis</u>. See <u>Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and plaintiff may not proceed on appeal <u>in forma pauperis</u>.

11

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[5] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this _12th_ day of July, 2005.

BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

---

[5]     Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

12

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 2 in case 2:05-CV-02370 was distributed by fax, mail, or direct printing on July 13, 2005 to the parties listed.

---

Corey B. Haynes
WEST TENNESSEE STATE PENITENTIARY
00299024
P.O. Box 1150
Henning, TN 38041

Honorable Bernice Donald
US DISTRICT COURT